## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID RICH** | : | |
| | : | |
| | : | **CIVIL NO. WDQ-12-3226** |
| **v.** | : | **(RELATED CRIM. NO. WDQ-08-0438)** |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

**Rod J. Rosenstein**
**United States Attorney**

**Michael C. Hanlon**
**Assistant United States Attorney**

**36 South Charles Street, Fourth Floor**
**Baltimore, Maryland 21201**
**410-209-4895**

**Attorneys for United States of America**

**January 7, 2013**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DAVID RICH** | : | |
| | : | |
| | : | **CIVIL NO. WDQ-12-3226** |
| **v.** | : | **(RELATED CRIM. NO. WDQ-08-0438)** |
| | : | |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      Preliminary Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Police Testimony Concerning the Surveillance at 2702 Gresham
            Way and the Arrest of David Rich. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.   Testimony of Law Enforcement Officers Concerning the Search of
            2702 Gresham Way. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.   Statements by David Rich. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    V.    Wiretap Evidence and Testimony of Tiffany Edwards. . . . . . . . . . . . . . . . . . . . 10

    VI.   Stipulation to the Defendant's Prior Criminal Conviction. . . . . . . . . . . . . . . . . 11

    VII.  Defense Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    VIII. Sentencing and Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.      THERE WAS NO INEFFECTIVE ASSISTANCE WHERE
        COUNSEL DID NOT MOVE *IN LIMINE* TO BAR
        TESTIMONY FROM TIFFANY EDWARDS....................................... 13

        A.      Counsel's Performance on This Issue Was Not Deficient............. 13

        B.      The Defendant Has Failed to Demonstrate Prejudice. ............... 18

II.     THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL
        WITH RESPECT TO ANY FAILURE BY TRIAL COUNSEL TO
        OBTAIN MORE DISCOVERY CONCERNING TIFFANY EDWARDS...... 19

        A.      There Was No Deficient Performance on This Issue.. ............... 19

        B.      The Defense Has Failed To Establish Prejudice...................... 20

III.    THERE WAS NO *BRADY* VIOLATION IN THIS CASE.................... 21

        A.      Favorability. ............................................... 21

        B.      Suppression. ............................................... 23

        C.      Materiality. ............................................... 24

IV.     THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL
        WITH RESPECT TO TRIAL COUNSEL'S ATTEMPTS TO
        SECURE ADDITIONAL DISCOVERY CONCERNING MARK
        LUNSFORD.................................................... 25

        A.      There Was No Deficient Performance on This Issue.. ............... 25

        B.      The Defendant Has Failed to Establish Prejudice on This Issue.. ....... 27

V.      THE DEFENDANT HAS FAILED TO ESTABLISH
        INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO
        THE JURY SELECTION.......................................... 28

        A.      The Defendant Has Failed to Establish Deficient Performance
                Because He Provides No Reason to Believe that Trial Counsel
                Should have Stricken Someone Else From the Jury.................. 28

        B.      Defendant Has Failed to Establish Prejudice.. ..................... 29

VI.     THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL
        WITH RESPECT TO THE DISCUSSION OF THE ARREST

WARRANT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    A.      There Was No Deficient Performance by Counsel on This
          Issue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    B.      There Was No Prejudice From the Mention of the Arrest
          Warrant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

VII.    THE DEFENDANT CANNOT DEMONSTRATE INEFFECTIVE
       ASSISTANCE OF COUNSEL WITH RESPECT TO THE NATURE OF THE
       ARREST WARRANT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VIII.   THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH
       RESPECT TO COUNSEL'S FAILURE TO OBJECT TO REFERENCES TO
       CONFIDENTIAL INFORMANT TIPS ABOUT DAVID RICH.. . . . . . . . . . . 34

    A.      There Was No Deficient Performance on This Issue Because the
          Government Was Permitted to Present Information About the
          Confidential Tips.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    B.      There Was No Prejudice Because There Is No Reasonable
          Probability That This Evidence Impacted the Verdict.. . . . . . . . . . . . . 35

IX.    THERE WAS NO INEFFECTIVE ASSISTANCE BY COUNSEL'S
       FAILURE TO OBJECT TO THE JURY INSTRUCTIONS.. . . . . . . . . . . . . . 36

    A.      There Was No Deficient Performance on This Issue.. . . . . . . . . . . . . . 36

    B.      The Defendant Has Not Demonstrated Prejudice on This Issue... . . . . . 39

X.     THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL ON
       APPEAL WITH RESPECT TO A CLAIM THAT THE PROOF AT
       TRIAL VARIED WITH THE ALLEGATIONS OF THE
       INDICTMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    A.      There Was No Deficient Performance on This Issue Because There
          Was No Variance Between the Indictment and the Proof... . . . . . . . . . . 40

    B.      There Was No Prejudice Because an Appeal Based on Variance
          Would Have Failed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

XI.    THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH
       RESPECT TO THE DISTRICT COURT'S COMMENTS TO COUNSEL,
       BECAUSE THE COMMENTS WERE PROPER.. . . . . . . . . . . . . . . . . . . . 41

    A.      There Was No Deficiency on This Issue Because There Was No

                        Basis to Appeal the Conviction Based on the Court's Comments.. . . . . . 41

            B.      There Was No Prejudice on This Issue Because Any Appeal Would Have
                    Been Unsuccessful.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

    XII.    THE SENTENCED IMPOSED WAS LAWFUL... . . . . . . . . . . . . . . . . . . . . . . 44

    XIII.   EVEN TAKEN TOGETHER, THE DEFENDANT'S CLAIMS DO NOT
            ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL.. . . . . . . . . . . . . 44

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID RICH | : | |
| | : | |
| | : | **CIVIL NO. WDQ-12-3226** |
| v. | : | **(RELATED CRIM. NO. WDQ-08-0438)** |
| | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

**TABLE OF AUTHORITIES**

**CASES**

*Blumenthal v. United States*, 332 U.S. 539 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brady v. Maryland*, 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

*Carter v. Lee*, 283 F.3d 240 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 47

*Custis v. United States*, 511 U.S. 485 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Kyles v. Whitney*, 514 U.S. 419 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nickerson v. Lee*, 971 F.2d 1125 (4th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Old Chief v. United States*, 519 U.S. 172 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38, 39

*Strickland v. Washington*, 466 U.S. 668 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***passim***

*United States v. Banks*, 10 F.3d 1044 (4th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bates*, 600 F.2d 505 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 40

*United States v. DeTemple*, 162 F.3d 279 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Dean*, 604 F.3d 169 (4th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Flemmi*, 402 F.3d 79 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Funk*, 683 F.3d 512 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Johnston*, 146 F.3d 785 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Love*, 767 F.2d 1052 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Magnano*, 543 F.2d 431 (2d Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. McCoy*, No. 89-5659, 1990 WL 190498 (4th Cir. 1990). . . . . . . . . . . . . . . . . 15

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Rangel-Arreola*, 991 F.2d 1519 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Silva*, 380 F.3d 1018 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Smith*, 452 F.3d 323 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*United States v. Terry*, 366 F.3d 312 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38, 39

21 U.S.C. § 841(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21 U.S.C. § 851. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DAVID RICH** | : | |
| | : | |
| | : | **CIVIL NO. WDQ-12-3226** |
| **v.** | : | **(RELATED CRIM. NO. WDQ-08-0438)** |
| | : | |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its undersigned counsel, respectfully

submits its memorandum of law in opposition to the motion filed by the defendant, David Rich

(ECF 79), pursuant to 28 U.S.C. § 2255.  For the reasons discussed below, the 2255 motion

should be denied.

**INTRODUCTION**

Following a trial, a jury convicted the defendant of conspiracy to distribute one kilogram

or more of heroin; possession with the intent to distribute 100 grams or more of heroin;

possession of a firearm in furtherance of a drug-trafficking crime; and possession of a firearm by

a convicted felon.  Rich appealed his conviction and life sentence.  The United States Court of

Appeals affirmed both in *United States v. David Rich*, 434 Fed. Appx. 224 (4th Cir. 2011)

(attached as Exhibit 1).

Rich filed the present motion to vacate through new counsel on November 4, 2012.  In

the motion, Rich asserts twelve claims, most of which sound in ineffective assistance of counsel:

First, Rich claims that trial counsel was ineffective for failing to object to the trial

testimony of a government witness about (according to Rich) a different conspiracy.  That

argument fails because the testimony was not about a separate conspiracy, and in any event, the

testimony was admissible.

Second, Rich claims that trial counsel was ineffective for failing to seek additional discovery about that same witnesses' involvement in other drug activity.  Contrary to its claims, the defense had complete discovery about all of that witnesses' background information and was able to mount a perfectly competent cross-examination of her.

Third, the defense claims that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose information about an investigation of a law enforcement officer. This claim fails because the defense had discovery about this issue and even attempted to present evidence and argument about it.

Fourth, and related to the third claim, the defense claims that trial counsel was ineffective for failing to seek additional discovery concerning the involvement of that law enforcement officer in the case.  That argument fails because defense counsel did attempt to obtain and use information about that police officer.  Counsel's efforts failed because the information was irrelevant.

Fifth, the defense claims that trial counsel was ineffective for failing to strike two jurors. The defense provides no argument or evidence (aside from rank speculation) that any such strikes would have affected the outcome of the proceeding, or why striking those jurors was more important than the panel members who actually were stricken.

Sixth, the defense claims that trial counsel was ineffective for eliciting testimony about the defendant having an outstanding warrant for another offense when he was arrested.  This argument fails because counsel's treatment of that issue was part of a strategy of asserting that Rich had a reason to run from the police that was not drug-related, and thus was trial strategy

2

within the judgment of competent counsel.

Seventh, the defense essentially repeats the sixth claim, this time with the emphasis being that counsel should not have sought the *nature* of the warrant. The claim fails for the same reason.

Eighth, the defense claims that counsel should have objected on Confrontation Clause and hearsay grounds to testimony about the defendant being a drug-dealer. This argument fails because the comments in question were brief, were admissible because they explained law enforcement action and because they had no impact on the trial.

Ninth, the defense claims that counsel was ineffective for not objecting to one of the jury instructions. An analysis of the instruction in context, as well as the record, demonstrate that there was no prejudice on this point and in fact that the district court corrected the jury instruction in question. Therefore, this argument also fails.

Tenth, the defense claims that counsel was ineffective for not claiming on appeal that the proof at trial varied impermissibly from allegations in the superseding indictment. The argument fails because, as stated above, there was only one conspiracy in this case and the government's proof did not vary from the indictment.

The defendant's eleventh claim is that appellate counsel should have pursued an appeal on the basis of comments made by the Court about counsel. This argument fails because there is no reason to believe either that the Court's criticism was inappropriate, or that the failure to pursue that appeal had any affect on the outcome.

The defendant's twelfth claim (and the second one not based on ineffective assistance of counsel) is that the mandatory minimum sentence imposed upon him was improper because his

3

two prior convictions were "invalid."  Again, the defense provides not a shred of evidence in

support of this claim.  On the contrary, the defense merely alludes to the notion that counsel is

pursuing collateral attacks on this convictions in state court now.  By implication, the convictions

are for the moment (and were at the time of sentencing) valid.

## STATEMENT OF FACTS

The facts of the defendant's federal offense were established during his trial, which took

place from September 26 through October 1, 2009.

### I.       Preliminary Proceedings

Prior to trial, defense counsel filed motions to suppress the evidence recovered from

David Rich's apartment, as well as derivative evidence, on the grounds that the warrant used to

obtain the information was insufficient to satisfy the Fourth Amendment.  The defense also

sought a hearing pursuant to *Franks v. Delaware* on the grounds that the law enforcement affiant

had made false statements in the warrant application.  Tr. I/3-24.[1]  The Court denied the motion

to suppress.[2]  Tr. I/24.

On the morning of trial, government counsel put on the record its intention not to use the

fact that the arrest warrant pending for the defendant on August 25 was for kidnaping and assault.

Tr. I/26.  The government proposed that the parties only say that the police were there to execute

an arrest warrant.  Tr. I/26.  Defense counsel objected to that.  Tr. I/27.  Defense counsel

---

[1]       The government intends to provide courtesy copies of the trial transcripts to the
Court and counsel.  Citations to the trial transcript will be by "Tr." followed by the volume (I, II,
III, or IV) and page number of the citation.

[2]       The defense appealed the denial of the motion to suppress to the Fourth Circuit.
The Fourth Circuit affirmed this Court's denial of that motion.  *Rich*, 434 Fed Appx. at 226.

4

expressed concerns about the jury being told that there was any arrest warrant for the defendant outstanding at the time.  Tr. I/27.

Likewise, government counsel proposed to make no reference to the use of a confidential source.  I/26.  Defense counsel expressed a concern in that regard as well, because at the time counsel did not know how involved the confidential source was in the investigation, and therefore did not know whether the confidential source created any "taint" with respect to the investigation.  Tr. I/27.

Prior to opening statements, government counsel also put on the record the question of police officer Mark Lunsford, who had (days before the trial) been charged by federal criminal complaint with theft and related offenses.  Tr. I/29.  The government objected to any mention of Lunsford, given that Lunsford was not named in any reports, had a minimal involvement (if any) in the events at issue, and was not going to testify in the trial.  Tr. I/29.  Mister Neverdon argued, in response, that Lunsford was a member of the DEA group that investigated Rich and that Lunsford had taken possession of cash seized from Rich's home.  Tr. I/30.  Therefore, counsel believed that Lunsford might have effected a "taint" with respect to the rest of the investigation, and also wanted to know whether Lunsford had any contact with the confidential source.  Tr. I/30.

Testimony began following opening statements.  Tr. I/39.

II.     **Police Testimony Concerning the Surveillance at 2702 Gresham Way and the Arrest of David Rich**

The government began its case with a series of witnesses who testified about the events of August 25 and 26, 2009.  Tr. I/40.  Members of the Drug Enforcement Administration (DEA), acting on information from a confidential informant, began surveilling a person they believed to be David Rich.  Tr. I/40, III/473.  Agents located Rich's 2008 Mercedes Benz, and followed that car from 14 Enchanted Hills Way, Baltimore City, Maryland.  Tr. I/41-42.  The investigators followed Rich to an apartment building, 2702 Gresham Way, in Baltimore County, Maryland.  Tr. I/42.  Agents were not completely sure that the person was Rich, but the person fit Rich's description.  Tr. I/45.  Surveillance of the male continued at the Gresham Way location until the following day, August 26.  Tr. I/45.  During the course of the night and the next day, on two occasions, investigators observed a male, fitting Rich's description, standing on the balcony of one of the apartments in the 2702 building at Gresham Way.  Tr. I/45, 51.

At approximately 9:15 pm on August 25, a female arrived at the location in a van, walked into 2702 Gresham, and departed.  Tr. I/46-47.  The female had a duffle bag when she walked into the building, and did not have the bag when she left 15 minutes later.  Tr. I/46-47, III/491-93.  The female was identified as Tiffany Lucas.  Tr. III/493.

At 12:15 pm on August 26, officers saw a male fitting Rich's description standing on the balcony one more time.  Tr. I/52, III/502-03.  Moments later, Rich himself left the building and got into the Mercedes.  Tr. I/56, III 505-06.

Officers, including DEA Task Force Officer Brian Shutt (the case agent) attempted to stop the Mercedes and to execute the arrest warrant for Rich.  Tr. I/57, III/512.  TFO Shutt showed his badge and yelled, "police, get out of the vehicle"; in response, the Mercedes tore out

6

of the parking space and nearly ran over TFO Shutt.  Tr. I/57-58, III/512.  TFO Shutt had to jump out of the way to avoid being hit by the car.  Tr. I/58.  The Mercedes fled, and led police vehicles on a chase through surrounding neighborhoods.  Tr. I/62-65.  Rich abandoned his vehicle and continued to flee on foot.  Tr. I/63, 98.  Officers apprehended him in a wooded area near Interstate 695.  Tr. I/101, 105.

Back at Gresham Way, officers entered apartment 3 (the location corresponding to the balcony where they had seen Rich) pending a search warrant.  Tr. I/66, II/157-58.

Attorney Neverdon cross-examined each of the government's initial witnesses.  Counsel asked the witnesses about every available detail concerning the intelligence that led the officers to conduct surveillance at 14 Enchanted Way.  Tr. I/68.  He established whatever limitations there were on each witness's testimony, such as whether the witness was not present for part of the case, or missed a part of the events.  Tr. I/69, 81, 89.

When possible, Mr. Neverdon attacked the manner of the investigation and the procedures used by the officers.  For example, Mr. Neverdon established that the defendant had been bitten twice by a police canine while the police were looking for the defendant in the woods.  Tr. I/111.  Likewise, during the cross-examination of Sgt. Charles Lewis, Mr. Neverdon raised the issue of the reasons for the police attempt to arrest Rich.  Tr. I/79-80.

The issue of whether to bring in the arrest warrant was the subject of a bench conference. Tr. I/79.  Mister Neverdon asked one of the officers about why the decision was made to arrest Rich at gunpoint.  Tr. I/79.  Government counsel asked to approach the bench, and put on the record that counsel's question would elicit the nature of the warrant (that it was for kidnaping and assault).  Tr. I/80.  The Court then gave counsel an opportunity to withdraw the question.  Tr.

7

I/80.  Mister Neverdon conferred with the defendant on that issue.  Tr. I/80.  After conferring

with the defendant, counsel proceeded with the question.  Tr. I/80.  Sgt. Lewis answered that

Rich was arrested at gunpoint because the warrant was for kidnaping and assault.  Tr. I/80.

### III.    Testimony of Law Enforcement Officers Concerning the Search of 2702 Gresham Way

Following the arrest, officers returned to the Gresham apartment and secured the location.

Tr. II/157-58.  Officers did not have a search warrant at that moment, but secured the house

pending obtaining such a warrant.  Tr. II/157-58.  Detective Shutt obtained the search warrant

from a state court judge.  Tr. III/522-23.

During the search warrant, law enforcement officers recovered the following:

•       Bags of heroin, from various locations in the kitchen and other locations in the

        residence.  Tr. II/161, 241-44, 246-47.

•       Packaging materials and related drug paraphernalia, including boxes containing

        red and white gel capsules.  Tr. II/252, 254-55, 257-58.

•       Cutting agents like mannite.  Tr. II/161, 283.

•       A pressing device for compressing heroin into pill form, from the kitchen pantry.

        Tr. II/166.

•       A loaded handgun from a dresser in the bedroom.  Tr. II/168, 259.

•       A quantity of United States currency.  Tr. II/169, 263, 272-73.

•       Evidence indicating Rich's occupancy of the apartment, including men's clothing,

        documentation in Rich's own name, and a card addressed to "Oak," Rich's

        nickname.  Tr. II/261, 267-68.

Lab analysis confirmed that 561.1 grams of heroin were recovered from the apartment.

Tr. III/420-21.

Several witnesses testified about the processing of the money found in the apartment. The defense made a major point of establishing that Mark Lunsford was involved in some capacity in the handling the recovered money.  Tr. II/200-02, 312.  That was correct, however witness testimony and reports also made clear that Lunsford's involvement was limited to processing the money and taking it to the bank, only *after* the money was recovered and counted by other officers.  Tr. II/264, 272-73, 319-20.  The count made of the money prior to Lunsford's involvement established that it was more than $85,000 in cash.  Tr. II/272-73.

### IV.     Statements by David Rich

Following the arrest, and while the searches were ongoing and thereafter, DEA agents spoke with David Rich.  Tr. II-147, III/532.  First, the officers advised the defendant of his *Miranda* rights, and the defendant acknowledged those rights, waived them, and agreed to make statements.  Tr. II/149-50, III/532.

During the interview, the agents and Rich talked about the warrant.  Rich thought that the warrant had been recalled.  Tr. II/151-52.  Rich told the DEA that he had a job traveling to New York and buying clothes, which he then sold in Baltimore.  Tr. II/152.  Rich stated that his girlfriend lived at the Gresham Way apartment, but he was not able to specify the floor on which the apartment was located.  Tr. II/154, III/532.  Rich denied that any money or drugs would be found inside the apartment.  Tr. II/154.  Rich was adamant that no one go into the apartment because his girlfriend's mother was very strict and she would not let anyone in the apartment.  Tr. II/154.  The defendant denied knowing anything about 14 Enchanted Way.  Tr. II/155.

During the interview, agents referred to Rich by his nickname "Oakie."  Tr. II/156.  The

9

defendant responded to that name.  Tr. II/156.

Agents spoke with Rich a second time after the search was completed at the apartment.

Tr. II/170.  Rich denied possession of any of the contraband found at the apartment, and stated

that he would "roll the dice" with respect to any charges.  Tr. II/170.  As the agents were leaving,

Rich referred to one of them as "buddy" in a manner quite similar to a voice intercepted during

one of the wiretaps conducted in this case.  Tr. II/171.  The investigators testified that Rich's use

of the term "buddy" was identical to a voice they heard engaged in a drug transaction with wire

target Mark Owens on July 22, 2008.  Tr. II/171-72, III/533.

### V.      Wiretap Evidence and Testimony of Tiffany Edwards

During the testimony of two of the DEA agents, the government played a recorded phone

call obtained during the wiretap of Mark Owens, the individual identified as one of Rich's drug

associates.  Tr. II/219, III/538.  The other voice on the recording was Rich, and was identified by

two DEA agents who had interviewed Rich following his arrest and recognized Rich's voice

from the tape (especially Rich's use of the word "buddy").  Tr. II/171, III/533.

During the call, Rich spoke with Mark Owens.  Rich told Owens, "I'm trying to get me

two of them."  Tr. II/220.  The DEA agents testified that, in their experience, such a call

indicated an attempt to obtain two units of narcotics.  Tr. II/220, III/538-39.  It was common for

drug dealers to order up quantities of drugs by stating a number but without specifying on the

phone the nature of the thing being ordered.  Tr. II/220, III/538-39.

Tiffany Edwards testified pursuant to a cooperation plea agreement.  Tr. II/346.  Edwards

testified that she began transporting drugs for Raymond Stern in 2007.  Tr. II/333.  She

transported drugs to an individual named Sharrod Harris, who worked for Mark Owens.  Tr.

10

II/334-35.  Edwards carried multiple kilograms of heroin for the group during this time.  Tr. II/337.

Edwards met the defendant David Rich through Raymond Stern during spring 2008 at a party.  Tr. II/339.  At some point, the witness began transporting heroin from Stern to Rich.  Tr. II/339.  Stern provided instructions to Edwards about those transports, and Edwards would take the heroin to a female named Tiffany Lucas, who received the heroin for Rich.  Tr. II/341.  On one occasion, Edwards brought a package of four pounds (two kilograms or so) of heroin to Lucas.  Tr. II/343.  Rich was right there in a car during the exchange with Lucas.  Tr. II/343.

## VI.    Stipulation to the Defendant's Prior Criminal Conviction

The defendant stipulated to the fact that he had a prior conviction punishable by a term of imprisonment exceeding one year.  Tr. III/451.  The stipulation read to the jury simply stated that the defendant had a prior conviction.  Tr. III/451.  The stipulation did not contain any discussion of the nature of the conviction.  Tr. III/451.

## VII.   Defense Case

The defense presented a case.  The defense re-called Detective Shutt.  During that testimony, defense counsel asked a series of questions about the process for registering confidential informants under DEA procedures.[3]  Tr. IV/788-93.

The defense also presented a neighbor from the Gresham apartments.  Tr. IV/800-01.  The neighbor testified about what she saw when the Mercedes pulled out of the parking space on the day of the arrest and search.

---

[3]        The proper use of a confidential informant, and the use of the confidential informant in this case, were running themes through the cross-examination of the government witnesses as well.

**VIII.   Sentencing and Appeal**

The jury convicted the defendant of all counts.  The defendant appeared for sentencing on April 22, 2010.  The Court sentenced the defendant to life imprisonment.  That was the mandatory minimum sentence in this case, because the defendant was convicted of an offense under 21 U.S.C. § 841(b)(1) and had two prior convictions for felony drug offenses.

The defendant appealed his conviction.  The United States Court of Appeals affirmed the conviction on June 14, 2011.  *See United States v. David Rich*, 434 Fed. Appx. 224 (4th Cir. 2011) (attached as Exhibit 1).

## ARGUMENT

Section 2255 of Title 28 of the United States Code, the statute under which the defendant seeks his relief, provides relief to a prisoner in federal custody only on specific grounds, including:

(1) that the sentence was imposed in violation of the Constitution or laws of the United States;

(2)  that the court was without jurisdiction to impose such a sentence;

(3)  that the sentence was in excess of the maximum authorized by law; or

(4)  that the sentence is otherwise subject to collateral attack.

To obtain relief under section 2255 on a theory of ineffective assistance of counsel, a petitioner has the burden of demonstrating (1) that he received ineffective assistance of counsel; and (2) that he was prejudiced by that ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir. 1998).  To satisfy the first prong, a petitioner has the burden of proving that his attorney's

12

conduct violated the Sixth Amendment by falling below the reasonable standard of conduct

expected of attorneys.  *See Strickland*, 466 U.S. at 688; *DeTemple*, 162 F.3d at 289.

To satisfy the second prong, prejudice, a petitioner  must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  *See DeTemple*, 162 F.3d at 289.

In this case, the defendant cannot make the required showing with respect to any of his

complaints.  This memorandum will address each claim in turn.

## I.    THERE WAS NO INEFFECTIVE ASSISTANCE WHERE COUNSEL DID NOT MOVE *IN LIMINE* TO BAR TESTIMONY FROM TIFFANY EDWARDS.

The defendant's first claim is that trial counsel was ineffective for failing to move to

exclude the testimony of Tiffany Edwards about Mark Owens.  Def. Br. 12.  This argument rests

on the premise that the Mark Owens testimony involved a "different drug conspiracy."  Def. Br.

12.  The defendant is incorrect.

### A.    Counsel's Performance on This Issue Was Not Deficient.

The defendant's argument concerning multiple conspiracies misapprehends federal

conspiracy law.  A review of the relevant law demonstrate that there was no merit to a motion to

exclude Edwards's testimony on a multiple conspiracies theory.

To prove a conspiracy to distribute narcotics, the government must establish: (1) an

agreement to possess narcotics with the intent to distribute; (2) that the defendant knew of the

conspiracy; and (3) that the defendant knowingly and voluntarily became a member of the

conspiracy.  *See United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996).  A conspiracy may

(and often is) proven through circumstantial evidence, and the evidence need not exclude every

reasonable hypothesis of innocence, provided that the evidence permits a finder of fact to reach a

conclusion of guilt beyond a reasonable doubt.  *See id.* at 858.  Criminal conspiracies are prone to having an "elusive quality," and a person may be a convicted of conspiracy even if he does not have complete knowledge of the entire breadth of the conspiracy, or its other members.  *See id.* Rather, the issue in a drug conspiracy case is whether a defendant has combined with others, however informally, to "sustain[] the overall enterprise of catering to the ultimate demands of a particular drug consumption market."  *Id.*   Although the government must prove a defendant's connection to a conspiracy, the evidence need only prove a "slight connection between the defendant and the conspiracy."  *Id.* at 861.

The defense argues that multiple conspiracies were present because Rich and Owens were engaged in different legs of the Stern distribution system, with Rich moving heroin in one way and Owens the other.  The defense also points to the lack of direct contact between the two (an argument that ignores the wiretap call).  The law, however, flatly rejects such a limitation on the scope of a conspiracy.

Merely because two persons lack direct contact with one another does not preclude them from being members of a single conspiracy.  *See Blumenthal v. United States*, 332 U.S. 539, 559 (1947) ("Indeed that may be what took place chronologically, for conspiracies involving such elaborate arrangements generally are not born full grown.  Rather they mature by successive stages which are necessary to bring in the essential parties.  And not all of those joining in the earlier ones make known their participation to others later coming in").  Likewise, the Fourth Circuit and other courts have recognized that two persons may be members of the same conspiracy even if they do not know each other.  *See, e.g., United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993) (nothing that a person may be a member of a drug conspiracy without

14

knowing its full scope, and may include members who are loosely associated with, or even in

competition with one another); *United States v. McCoy*, No. 89-5659, 1990 WL 190498 at * 5

(4th Cir. 1990) ("Even if Runyon *actually* did not know Nance was involved, coconspirators need

not know of each other's existence."); *United States v. Johnston*, 146 F.3d 785, 791 (10th Cir.

1998) ("Thus, the government was not required to prove that Johnston conspired with any or all

of the named codefendants, so long as it at least proved that he conspired 'with others' for the

purpose alleged."); *United States v. Rangel-Arreola*, 991 F.2d 1519, 1522 (10th Cir. 1993)

("Although the codefendants claimed they did not know each other, 'several persons may be

parties to a single conspiracy even if they have never directly communicated with one another;

the question is whether they are aware of each other's participation in a general way and have a

community of interest.'" (quoting W. Lafave & A. Scott, Jr., Handbook on Criminal Law § 62 at

470 (1972)); *United States v. Magnano*, 543 F.2d 431, 434 (2d Cir. 1976) (finding evidence

sufficient to convict defendants of membership in a single conspiracy, even though they were

separate, independent suppliers of common distributors, provided that each defendant had only

"consummated one transaction with the core group").

Given the case law discussed above, any motion to exclude the testimony of Tiffany

Edwards in this case, or to have pursued a multiple conspiracies theory, would have been

unavailing.  Counsel cannot be called deficient for failing to bring a meritless motion.

The defendant's position that the Mark Owens testimony involved a different conspiracy

is incorrect.  The testimony of Tiffany Edwards established that Mark Owens and David Rich

were both members of a single conspiracy, comprised of Raymond Stern (the supplier), Tiffany

Edwards (Stern's courier) and Stern's other customers, including Sharrod Harris, Mark Owens,

15

Tiffany Lucas and David Rich.  Tr. II/333-35, 339.  The law does not require that David Rich buy from Mark Owens, or vice versa, or that Rich and Owens be joined at the hip during the course of their drug activity.  Rather, federal law simply requires that there be a core group of persons who have reached a meeting of the minds to distribute drugs, and that Rich had entered into that agreement.  *See Burgos*, 94 F.3d at 857.  If nothing else, the core conspiracy in this case included Stern and Edwards, and their various customers were also members even if those individual customers lacked direct contact with one another.  Certainly, there was a single conspiracy in this case.  Given that the law would not have supported a multiple conspiracies objection or theory here, any attempt by trial counsel to exclude the Mark Owens testimony would have been futile.

That said, there was evidence of a direct connection between Mark Owens and Rich (even though the law did not require such a connection).  Rich was intercepted on the Mark Owens wiretap.  During a recorded phone call with Owens, Rich ordered two units of narcotics from him.  Tr. II/220.  That phone call certainly established that the two of them were engaged in a common conspiracy, even by the defendant's standard.

Even assuming that the Mark Owens information was a separate conspiracy, however, Tiffany Edwards's testimony about her drug deliveries to Owens was still admissible.  A cooperating witness's involvement in crimes, even apart from crimes committed along with a defendant on trial, may be reflective of that witness's criminal experience and credibility.  *See United States v. Flemmi*, 402 F.3d 79, 88 (1st Cir. 2005) (cooperating witness was permitted to testify about murders committed separately from the criminal activity of trial defendant).  Additionally, courts have permitted evidence of a cooperator's independent criminal activity as evidence of "background," to explain how the witness and the defendant know one another and

why the defendant would trust the witness to engage in additional criminal activity. *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (affirming district court's admission of fact that cooperating witness had engaged in kilogram-level drug dealing on his own, because the evidence tended to show why defendant trusted the informant); *United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979) (proper to admit cooperator's activities predating the conspiracy because it was relevant to the significance of later behavior). Here, there was a close connection between Edwards's heroin activities with Rich, and her activities with Mark Owens, since both related back to her work for Raymond Stern. It was natural for the witness to testify about the total history of her drug activities.

The law is clear that the defense had no basis for a *legal* objection to the testimony of Tiffany Edwards about the Mark Owens evidence. That said, trial counsel did do everything in his power to attack Edwards's testimony on its *merits*. He established during cross-examination that Edwards never delivered cocaine directly to Rich. Tr. II/348. He attempted to limit, to the extent possible, the degree of interaction between Edwards and Rich (pointing out that Rich was in the car when Edwards delivered cocaine to Lucas, that Edwards and Rich did not speak, and so forth). Tr. II/350-52. Counsel later returned to the same subject matter. Tr. II/359-60. He confirmed that Edwards had never seen Rich in personal possession of heroin. Tr. II/352. Counsel cross-examined Edwards about her own guilty plea, and about the benefits she was receiving under her guilty plea. Tr. II/357-58. During cross, counsel pressed Edwards about the quality of the lighting when she testified to seeing Rich at a drug deal. Tr. II/361. Counsel also attempted to establish that Edwards was only guessing when she testified that she delivered about four pounds of heroin to Lucas. Tr. II/368. In sum, trial counsel did everything he could to

17

attack the testimony of Tiffany Edwards.  His cross-examination of was certainly competent.

Counsel also sought to attack the core of Edwards's testimony through the case agent, TFO Shutt.  Tr. III/585.  During the detective's testimony, counsel elicited what information he could about the lack of corroboration for Edwards, and the lack of hard evidence connecting David Rich to other conspirators.  Tr. III/585-87.  Specifically, counsel accused the detective of failing to "connect the dots" between Rich and the others, and of engaging in "speculation" with respect to the alleged connection.  Tr. III/585.

In the end, any objections by trial counsel to the Mark Owens testimony lacked merit and would have been denied.  It was not deficient for counsel to fail to make a meritless objection, and therefore, the defense cannot satisfy the first prong of *Strickland* on this issue.

### B.      The Defendant Has Failed to Demonstrate Prejudice.

The defense's discussion of prejudice is devoid of analysis, and is restricted to a conclusory statement that, because of the allegedly inadmissible Mark Owens testimony, there is a reasonable probability that the jury attributed heroin amounts to Rich that were only part of the Mark Owens conspiracy.  The defense provides no evidence in support of this bald statement, save a citation to *Strickland* and a restatement of the prejudice standard.

An analysis of the evidence demonstrates that there was no prejudice (even if the defense were correct that the Mark Owens information was inadmissible).  Even without the references to the Mark Owens part of the conspiracy, the government would have had no trouble at all proving that Rich's conspiracy involved well over a kilogram of heroin.  The heroin recovered from Rich's Gresham apartment, 561.1 grams total, put the government more than half-way there.  Tr. III/420-21.  In addition to that, the testimony of Tiffany Edwards provided more than enough

18

weight to establish *at least* a kilogram of heroin attributable directly to Rich.  Edwards testified about one instance in which she delivered two kilograms of heroin from Raymond Stern to Tiffany Lucas for Rich.  Tr. II/343.

To the extent that the defendant relies on the weight question on this claim, the defendant's argument fails.  The government did not need the Mark Owens information to attribute one kilogram of heroin to David Rich.  Indeed, this case involved far in excess of a kilogram of heroin even without Mark Owens.

## II.   THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO ANY FAILURE BY TRIAL COUNSEL TO OBTAIN MORE DISCOVERY CONCERNING TIFFANY EDWARDS.

The defendant's second argument is that trial counsel was ineffective for not seeking more discovery concerning Tiffany Edwards and her involvement with Mark Owens.  The argument fails.

### A.   There Was No Deficient Performance on This Issue.

First, the defense completely fails to establish any bad performance by trial counsel.  The entire defense argument on this issue rests on its incorrect belief (discussed in section I, *supra*) that the Mark Owens part of the conspiracy was unrelated to the David Rich part of the conspiracy.  The argument simply ignores the evidence.  Tiffany Edwards testified that she obtained heroin from Raymond Stern and distributed that heroin to Stern's customers Owens, Rich and others.  Tr. II/339-43.  Owens and Rich were both members of a common supply system and therefore members of a single conspiracy (whether they perceived each other as being in the same conspiracy is beside the point)  No quantity of additional discovery would have made it possible for the defense to establish multiple conspiracies, to impeach Edwards any

19

further, or accomplish anything else.  Trial counsel did everything he could.

**B.      The Defense Has Failed To Establish Prejudice.**

Second, the defense fails to establish how any bad performance by trial counsel resulted

in any prejudice.  As with the prejudice analysis found throughout the defense brief, the defense

cites to *Strickland*, restates the standard for establishing prejudice, and then make a conclusory

assertion that there is prejudice without any analysis or citation to the record.  Such assertions are

not sufficient to state a claim for relief under section 2255.  *See Nickerson v. Lee*, 971 F.2d 1125,

1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an

evidentiary hearing."), *abrogated on other grounds recognized in Yeatts v. Angelone*, 166 F.3d

255 (4th Cir. 1999); *United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (generalities and

conclusory assertions not sufficient to entitle habeas petitioner to evidentiary hearing); *United

States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004) (noting "enormous" deference accorded to

defense counsel, particularly in the context of trial strategy).

The defense claims that trial counsel should have gotten more discovery about Edwards,

Def. Br. 14, but provides absolutely no reason whatsoever to believe that any such discovery

exists, or that any such discovery would have been helpful.  Tiffany Edwards testified about the

drug-dealing activities of David Rich and his accomplices, including Stern, Owens and others.

No supplemental discovery motions by the defense would have changed that testimony.  The

defense has certainly provided no basis for believing that any such evidence exists, let alone that

trial counsel was deficient for failing to find it.

**III.**   **THERE WAS NO *BRADY* VIOLATION IN THIS CASE.**

The defendant's first non-Sixth Amendment claim is his assertion that he was denied *Brady* information pertaining to the prosecution of Mark Lunsford.

Due process requires that the government disclose to the defendant any material, exculpatory evidence.  *See Brady v. Maryland*, 373 U.S. 83, 86 (1963).  However, due process is violated by a non-disclosure of such evidence only if: (1) the evidence is favorable to the accused; (2) the evidence is in fact suppressed by the government; and (3) the evidence is material.  *See Kyles v. Whitney*, 514 U.S. 419, 433-34 (1985).  Undisclosed evidence is material when the cumulative effect of the evidence is such that there is a reasonable probability that, but for the non-disclosure, the result of the proceeding would have been different.  *See id.*  A "reasonable probability" is one that undermines confidence in the outcome of the proceeding. *See id.* at 434.  In this case, the defense claims fails to satisfy any of the elements of *Brady*.

**A.**     **Favorability**

First, there is no basis for the defendant's position that the Lunsford information was favorable to the defense.  Lunsford's minimal connection with this case had no impact on the evidence against Rich.  He never participated in the search at Gresham Way, recovered none of the evidence, and did not testify as a witness at trial.  His participation was merely as back up, watching the perimeter of the apartment area on the day of Rich's arrest and later running the recovered money to the bank (*after* the money was counted, more on that below).  Tr. II/319-20. There is simply nothing about the criminal charges later brought against Lunsford that would have affected the evidence against Rich.

The closest that the defense comes to an assertion of favorability is the suggestion that the

21

Lunsford information "cast doubt on the integrity and reliability of the evidence collection" in this case.  Def. Br. 18.  But the Lunsford evidence does not accomplish that.  According to the trial witnesses, Lunsford did not participate in the search at Rich's Gresham apartment.  Tr. II/186, 188, 198, 202, 264, 272-73, 312-13.  Lunsford did not recover or handle the drugs; did not recover or handle the drug paraphernalia; did not recover the handgun; and did not recover or handle the documentation taken from the apartment.  Indeed, according to the testimony, it is not clear that Lunsford ever even *entered* the apartment.  Tr. II/186, 188, 202, 313.

The only involvement by Lunsford was in a middling role in the transportation of money to the bank.  Tr. II/202.  Lunsford did not collect money from the apartment scene itself, and only took possession of the money *after* it was counted by other officers.[4]  Tr. III/198, 202, 319-20. Moreover, Lunsford did not testify as a government witness.  There was simply no opportunity for Lunsford to do anything to affect the integrity of this investigation, or the evidence against Rich.

The defendant also makes the unsupported allegation that, "upon information and belief," Lunsford played a "central role" in the investigation of Mark Owens.  Def. Br. 18.  The defense provides no evidence in support of that allegation; indeed, the reference to "information and

---

[4]     The defense suggests that Lunsford took possession of the money prior to it being counted, and cites to the testimony of one government witness who testified that he did not believe anyone had counted the money prior to it going to the bank.  Def. Br. 15; Tr. II/222-23. The defense fails to cite to the remainder of the trial record, however, in which government witnesses made clear that operating procedure when money is recovered by Baltimore County officers is for recovered money to be counted by *Baltimore County* investigators before being handed over to someone else for transfer to a bank.  Tr. II/319-20.  In this case, per the testimony of Detective Kimberly Rodriguez, that means that her Baltimore County colleagues counted the money before it was provided to Mark Lunsford for transportation to a bank.  Tr. II/319. Detective Rodriguez testified that she was present when the money was counted by the county detectives.  Tr. II/320.

belief" effectively constitutes a concession that no such evidence exists. Once again, the evidence presented at trial demonstrated that Lunsford had no involvement in this case at all, either with respect to Rich or Owens, with the exception of watching the perimeter on August 25-26 and running some money to the bank after it was already counted.

### B.    Suppression

Second, the Lunsford evidence was not suppressed. The government informed trial counsel about the Lunsford allegations prior to beginning of the trial. Tr. I/29-30. Indeed, the records makes absolutely clear that defense counsel was well aware of the allegations against Lunsford, of the nature of those allegations, and of the notion of using the evidence for the defense. Tr. I/28, 29-30. Moreover, the criminal complaint filed against Lunsford was a matter of public record. *See* Criminal Complaint, attached as Exhibit 2. It is simply absurd to suggest that this information was withheld from the defense. The record shows precisely the opposite.

Indeed, not only did defense counsel have the information, but he spent much of the trial trying to use the information or trying to gather more information about any involvement Lunsford might have had with the case. The defense knew that Lunsford had been suspended, knew that it involved criminal conduct, and knew enough to want more evidence about him in the record in order to determine his role in the DEA group, his handling of the recovered money, and any possible "taint" relating to his involvement. Tr. I/30. It is preposterous to suggest that evidence was "suppressed" when trial counsel obviously had access to it and used it during the trial.

The criminal complaint, which again was available as a matter of public record, put defense counsel completely on notice as to the nature of the allegations against Lunsford.

Exhibit 2 (complaint). The complaint affidavit detailed the charges against Lunsford as they stood at the time of the trial in this case, including: that Lunsford was accused of theft, false claims, false statements, conversion, obstruction of justice, and other charges, *id.* at para. 4; that the allegations included evidence that Lunsford mishandled a confidential source, submitted fraudulent claims concerning the confidential source's work in order to secure money payments from law enforcement (which Lunsford then split with the confidential source), that Lunsford had endeavored to insert the confidential source into cases in which he was not involved, in order to secure additional payments, *id.* at para. 6; and that Lunsford has stolen valuables, including a watch, from drug-dealers, *id.* at 7. The complaint also indicated that Lunsford had engaged in a pattern of such conduct in multiple cases. *Id.* at para. 10, 11, 13, 22. Certainly, that complaint made the defense fully aware of the allegations against Lunsford.

Thus, the defense simply cannot demonstrate that the information was suppressed. Indeed, the record makes it unclear how the defense can possibly make such a claim.

### C.      Materiality

Third, the evidence was not material. There is no "reasonable probability" that any additional introduction of Lunsford evidence in this case would have affected the verdict. As discussed already, the evidence against Rich was overwhelming: a half-kilogram of cocaine, documentation in his name, loads of packaging material and a handgun in his Gresham apartment; his flight from the location and his attempt to run over Detective Shutt while he escaped; his statements (exculpatory as he intended them to be) corroborating significant details of the government's case; his voice on a wiretap call with Mark Owens, confirming that Rich was a drug-dealer and confirming that his business relations included Mark Owens; and the

testimony of Tiffany Edwards (corroborated by everything already discussed), confirming that Rich was a multi-kilogram heroin dealer who bought heroin from Raymond Stern.  This was a strong case including every type of evidence - cooperating witness testimony, recovered drugs, a wiretap - a prosecution can hope to have.

The criminal activity of Mark Lunsford affects none of that.  Lunsford had no connection with Tiffany Edwards; no connection with the wiretap call with Rich and Owens; and no connection with the drugs, packaging material, and gun found in Rich's apartment.  There is simply no link, notwithstanding trial counsel's unending efforts during the trial to establish a link any way he could.  Tr. I/28-30, II/202, 312-13.  Lunsford added nothing to the government's case, and subtracted nothing from the government's case.  He simply had nothing to do with the prosecution.  There is no reasonable probability that any additional treatment of the Lunsford information would have affected the evidence in this case.

For these reasons, the defendant can satisfy none of the required prongs of *Brady*.

## IV.   THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO TRIAL COUNSEL'S ATTEMPTS TO SECURE ADDITIONAL DISCOVERY CONCERNING MARK LUNSFORD.

The defendant's fourth claim is closely related to the third.  Here, the defense claims that trial counsel should have done more to obtain discovery concerning Mark Lunsford.  Once again, this claim fails.

### A.   There Was No Deficient Performance on This Issue.

The defense cannot satisfy the first prong of *Strickland* on this issue for two reasons.

First, as discussed above, trial counsel actually did receive disclosures concerning the criminal activities of Mark Lunsford.

25

Second, trial counsel *did* attempt to obtain more information about Lunsford throughout the course of the trial.  The record demonstrates that trial counsel did everything he could to insert as much as Mark Lunsford as he could into this case and to obtain information about Lunsford.  During the cross-examination of Special Agent Andrew Biniek, counsel brought up the membership of the DEA group in this case and confirmed that Mark Lunsford was a member.  Tr. II/175.  Later, counsel asked about Lunsford's role in the investigation.  Tr. II/185.  Special Agent Biniek testified that, at the time, Lunsford was involved in other investigations and his role on the day of the Rich arrest was limited to "outer perimeter surveillance."  Tr. II/186.  Any involvement by Lunsford, Special Agent Biniek testified, was "minimal."  Tr. II/186-88.  When trial counsel was dissatisfied with the answers he was receiving, he accused the agent of intentionally minimizing Lunsford's involvement in the case.  Tr. II/188.

After some questions about other matters in the case, trial counsel turned Special Agent Biniek's attention back to the Lunsford issue.  Tr. II/198.  Counsel again asked about the level of Lunsford's involvement in the investigation.  Tr. II/198.  The witness testified that Lunsford was not involved in events at the apartment search.  Tr. II/198.  Trial counsel asked again about Lunsford's role, and for the second time the agent testified that Lunsford's role was maintaining the perimeter.  Tr. II/198.  Counsel then directed the agent's attention to a DEA report indicating that Lunsford had some involvement in the processing of money recovered from the apartment.  Tr. II/201-02.  The agent acknowledged the report, but also indicated that he did not personally see Lunsford handling any money.  Tr. II/202.

Counsel pursued a similar approach during his cross-examination of Detective Kimberly Rodrigez.  Tr. II/312.  Counsel asked the detective a series of questions about what specifically

26

was done with the money found in Rich's apartment.  Tr. II/312.  The detective stated that she

did not transfer the money to Lunsford.  Tr. II/313.  Counsel then asked the witness whether

Lunsford had any involvement in any of her other cases.  Tr. II/314-15.  Detective Rodriguez did

confirm that the money was counted by the Baltimore County police and was found to be

$85,452.  Tr. II/316.

On other occasions, counsel made more overt attempts to put the Lunsford information

into evidence.  Counsel asked Special Biniek about the specific details of the allegations against

Lunsford, and the Court sustained an objection by government counsel.  Tr. II/189.

This record makes it clear that trial counsel made extensive efforts to obtain as much

information as he could about Lunsford (over and above what he already had by virtue of

government disclosure and the publicly filed complaint).

### B.       The Defendant Has Failed to Establish Prejudice on This Issue.

The defendant is also unable to satisfy the second prong of *Strickland*, prejudice.  Once

again, the defense makes a conclusory citation to the reasonable probability standard, but then

provides no evidence in support of its claims that additional discovery demands by trial counsel

would have yielded anything.  As discussed above, trial counsel made numerous attempts to

obtain additional information about Lunsford during the trial.  Those efforts were fruitless

because there was nothing useful to discover, and also because trial counsel already had the

relevant information concerning Lunsford.  The defense cannot establish that any additional

efforts would have made a difference in this case, and hence there is no prejudice.

V.     **THE DEFENDANT HAS FAILED TO ESTABLISH INEFFECTIVE
       ASSISTANCE OF COUNSEL WITH RESPECT TO THE JURY SELECTION.**

The defendant's fifth claim is that trial counsel was ineffective because he failed to strike

jury venire members 447 and 480, who had ties to law enforcement.  Def. Br. 20.  The defendant

has failed to sustain his burden on this issue.

A.     **The Defendant Has Failed to Establish Deficient Performance Because He
       Provides No Reason to Believe that Trial Counsel Should have Stricken
       Someone Else From the Jury.**

In *United States v. Funk*, 683 F.3d 512 (4th Cir. 2012), the Fourth Circuit declined to find

ineffective assistance of counsel on the basis of decisions made during jury selection, in a

situation in which different decisions by a defense lawyer might have resulted in a "marginally

more sympathetic jury."  *Id.* at 522.  Indeed, the petitioner's claim in *Funk* that a hypothetical

jury might have been more favorable was not even enough to trigger an analysis of the issue

under *Strickland*.  *Id.*  The Court called such a claim "rank speculation."  *Id.*

In this case, the defendant engages in similar speculation.  He certainly has not sustained

his burden of demonstrating ineffective assistance of counsel.  As with many of the other claims

in the defendant's motion, the defense simply states that counsel did something wrong and then

follows up with a conclusory assertion of deficiency and prejudice under *Strickland*.  The defense

completely fails to analyze how counsel used his other peremptory strikes, or why those stricken

jurors were more desirable than venire members 447 and 480.  It is not enough to point out that

two people got on the jury who had law enforcement connections; given a limited number of

strikes, lawyers in every case have to accept the fact that a few jurors with undesirable

characteristics will become members of the final panel.

As a matter of common sense, *Strickland* would require not only a demonstration that a

28

couple of jurors with bad traits for the defense got on the panel, but also: (1) a showing that the jurors who *were* struck would have been better for the jury; and (2) a showing that the stricken jurors were so much better than numbers 447 and 480 that it was unreasonable and ineffective for counsel to make a judgment call about that.  The defense does not bother to engage in that analysis.  Accordingly it has not sustained its burden.

### B.    Defendant Has Failed to Establish Prejudice.

Likewise, the defendant does not come close to establishing prejudice on this issue.  As discussed at several points elsewhere in this memorandum (sections III©, XIII), the evidence against David Rich was overwhelming.  It is rank speculation to suggest that a minor tweak in the jury composition would have affected the outcome of the trial.  Merely because a juror has a connection with law enforcement does not make them biased or improper for a jury.  There is no reason to believe that any other two jurors would have voted to acquit.  Indeed, the defendant's conviction demonstrates that the evidence was sufficient for conviction for ten other jurors who, even by the defendant's analysis, were appropriate for the jury.  Given that ten jurors with no law enforcement connections had no problem convicting the defendant, there is no reasonable probability that changing two other jurors would have had any effect on the result.

### VI.    THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO THE DISCUSSION OF THE ARREST WARRANT.

The defense's sixth claim is that trial counsel was deficient for allowing reference to Rich's arrest warrant for kidnaping and assault to be communicated to the jury.  As with the defendant's other claims, this argument fails both prongs of *Strickland.*

### A.    There Was No Deficient Performance by Counsel on This Issue.

It is well established that defense lawyers are entitled to wide deference when it comes to

tactical decisions. *See Carter v. Lee*, 283 F.3d 240, 249-50 (4th Cir. 2002). A court reviewing a claim of ineffective assistance does not "grade" the performance of the defense lawyer, but rather considers only whether the lawyer's performance was reasonable under prevailing professional norms. *See id.* at 250. The court should indulge a strong presumption that a defense lawyer's conduct falls within the wide range of reasonable professional assistance. *See id.* A defendant claiming ineffective assistance must overcome this strong presumption that under the circumstances, the lawyer's performance might be considered sound strategy. *See id.*

In this case, there was a legitimate tactical reason for defense counsel to elicit that the there was an arrest warrant pending for David Rich on August 25 and that the warrant was for kidnaping and assault, as opposed to a drug charge. Defense counsel was faced with the problem of why the police were investigating David Rich, and also the problem of explaining why David Rich ran when approached by law enforcement. Throughout the trial, counsel pursued a theory that the evidence against Rich was limited and speculative, and based only on unreliable informant tips. Tr. I/27, II/182, III/589, 591-92, 596. The Court also made clear that the government would be permitted to provide some explanation as to how law enforcement came upon David Rich on August 25-26, whether due to the existence of a pending arrest warrant or the existence of a pending investigation. Tr. I/27. Faced with the problem of having either the arrest warrant or a police investigation in evidence, counsel was stuck with how to present it. Defense counsel might have opted to leave the circumstances of the arrest unknown. Such a strategy did pose some risks, however, in that it would have suggested to the jury that law enforcement officers had sufficient evidence of David Rich's drug activities to place him under arrest even prior to August 25. A jury aware of an arrest warrant or investigation, but not of the

details, would be prone to speculate.  Given the allegations of this case - that Rich was engaged

in a drug conspiracy and had heroin and a gun in his apartment - a possible assumption on the

jury's part would be to speculate that the arrest warrant or investigation related some other drug

activities by Rich.  In effect, there would have been a real risk that the jury would have assumed

that Rich was suspected of some other drug offense even prior to the events of August 25.

Instead of taking those risks, defense counsel instead pursued an approach in which the

jury was made aware of the fact that there was an arrest warrant, but that the arrest warrant had

nothing to do with drugs, and factually was totally unrelated to this case.  Although reference to

an assault or kidnap charge would have some embarrassing effect to the defendant, such effect

was minimized by the fact that the jury also heard during the trial that Rich believed his

girlfriend had withdrawn the warrant and it was no longer pending.  Tr. II/151-52.  Defense

counsel also used the arrest warrant issue as a means of minimizing the perceived strength of the

police case against Rich, by eliciting the fact that the legal, formal basis for the arrest of Rich on

August 26 was for only for the arrest warrant, and not for the drug conduct.  Tr. II/182.

Furthermore, mentioning the non-drug arrest warrant and distancing the legal basis for the

arrest from the "speculative" drug investigation was part of an ongoing defense strategy that

persisted throughout the trial (discussed in more detail in section XIII).  Defense counsel's

strategy was to suggest to the jury that this was a profoundly sloppy, defective, "rotten" police

investigation based on weak and corrupt information tips and bad judgments.  Tr. I/27, 30, 68,

92, II/176-77, 182 (verifying that the legal basis for the stop was the arrest warrant, *not* the drug

evidence), 298-300, III/589, 591-92, 620, 658-59, IV/845-47, 863.  The use of the arrest warrant

as a pretext for an invalid drug arrest was part of that theme.  Tr. II/182.

31

Finally, the existence of a possible arrest warrant was useful to the defense because it provided some explanation for David Rich's decision to run from the police other than the heroin and gun in his apartment. David Rich's flight and his apprehension in the woods near Interstate 695 was a strong piece of evidence establishing Rich's consciousness of guilt and his knowing possession of the contraband in the apartment. Any plausible explanation for Rich's flight other than the drugs was potentially helpful to the defense.[5]

The record makes clear that this was a decision that defense counsel reached only after consultation with his client. The question of whether to mention the arrest warrant first came up during the testimony of Sgt. Lewis. Tr. II/79. Counsel asked a question about why Rich was taken out of the vehicle at gunpoint. Tr. II/79. The parties approached, and during a bench conference it was made clear that the answer to the question would involve the arrest warrant. Tr. I/80. The record reflects that counsel than consulted with David Rich about what to do next. Tr. I/80. After that consultation, defense counsel did not withdraw the question, and Sgt. Lewis answered by reference to an arrest warrant that was separate and apart from any drug investigation. Tr. I/80. Thus, the record makes clear that this was a judgment call, made after consultation with the defendant, about establishing that Rich was arrested because of some unrelated charge, and *not* because of the drug evidence.

It should also be noted that trial counsel pursued this theory during closing argument. Defense counsel made reference to Rich's flight and arrest twice during his argument. Tr.

---

[5]     The defense argues that the utility of the arrest warrant in this regard was diminished because the defendant thought the warrant had been withdrawn. Def. Br. 21. That is correct, the arrest warrant was not a perfect explanation. The defense needed something, however, because in the absence of some other explanation, the *only* reason for Rich's flight from the apartment was that he was fleeing his own drug stash location.

IV/870, 873.  In both instances, counsel suggested that the police had a bias against Rich because they tried to arrest him on some other arrest warrant, and he got away.  Tr. IV/870, 873.  Counsel made a specific point of establishing that officers observed *no illegal activity* by Rich, except for some other arrest warrant that Rich knew about when he tried to run.  Tr. IV/873.  Given the strength of the flight evidence in this case, these were reasonable tactical judgments.

In essence, the defense was better off establishing that Rich ran and was arrested because of some unrelated, non-drug-related crime that was later dropped.  The alternative was for the jury to hear some scraps of information about an unidentified arrest warrant, and then to speculate about the meaning of the warrant.  Certainly, the treatment of this issue was within the bounds of reasonable trial strategy, and was therefore not deficient.

### B.    There Was No Prejudice From the Mention of the Arrest Warrant.

Even if counsel's performance on this issue was deficient, the defense cannot demonstrate that removing reference to the arrest warrant would have changed the outcome of the proceedings.

First, as discussed above, the fact is that the arrest warrant was for a non-drug related crime, and the defendant thought that it had been withdrawn.  There is no reason to believe that the jury was improperly swayed by any reference to this unrelated, and later dropped, criminal charge.  Indeed, it does a disservice to the jury to assume that the jurors disregarded their oaths and were compelled to convict David Rich not on the evidence, but on consideration of some unrelated, irrelevant other charge.

Second, the evidence was so overwhelming that there is no reasonable probability that the reference to the arrest warrant made any difference.  The strength of the evidence in this case has

already been discussed throughout this memorandum, including in sections III(C), XIII.  The

government had a powerful case against David Rich and the mention of the arrest warrant made

no difference.

**VII.    THE DEFENDANT CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE
OF COUNSEL WITH RESPECT TO THE NATURE OF THE ARREST
WARRANT.**

The defendant's seventh claim involves trial counsel's decision to elicit the nature of the

arrest warrant (over and above the existence of the warrant itself).  That issue has been addressed

in section VI, *supra*.  The defense was better off with the jury being aware that the August 26

flight was because Rich ran in connection with an unrelated crime, and that the other crime had

nothing to do with drugs.

**VIII.   THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH
RESPECT TO COUNSEL'S FAILURE TO OBJECT TO REFERENCES TO
CONFIDENTIAL INFORMANT TIPS ABOUT DAVID RICH.**

**A.     There Was No Deficient Performance on This Issue Because the Government
Was Permitted to Present Information About the Confidential Tips.**

As the defense acknowledges, the government is permitted to present testimony about

confidential informant tips when necessary to explain why law enforcement officers have taken a

particular action.  *See United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985); *United States v.

Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).

In this case, there was no deficient performance because any objection by defense counsel

would have been overruled based on *Love* and similar cases.  Every time a government witness

mentioned cooperating source information about David Rich, it was in the context of explaining

why law enforcement officers took investigative steps.  Tr. II/137 (Special Agent Biniek

explaining why surveillance was undertaken at 14 Enchanted Hills Way); III/473 (Detective

34

Shutt explaining why he initiated surveillance of David Rich on August 25).  Furthermore, the

agents provided no detail about this information; no specifics about how the confidential source

knew anything; and provided information only in the context of explaining to the jury why they

were doing surveillance.  Tr. II/137, III/473.  These were a few brief, *de minimis* references made

for a permissible non-hearsay purpose.

The government was permitted to elicit such information to explain why the officers were

doing what they were doing.  Given the cursory nature of the elicited information and the limited

purposes for which it was used, any objection to the testimony would have been without merit.

Accordingly, there was no deficient performance.

### B. There Was No Prejudice Because There Is No Reasonable Probability That This Evidence Impacted the Verdict.

Second, the defendant cannot demonstrate prejudice.  As discussed, there were a few

minimal references to confidential information about Rich.  The few times the subject came up, it

was in the context of explaining why an agent pursued an investigation.  Tr. II/137.  The

government never returned to this issue, and made no further attempt to elicit further detail about

the confidential information.  The government closing argument underscored this lack of

prejudice.  Tr. IV/815-44.  Government counsel made no reference to any cooperating source

information, with the exception of Tiffany Edwards, who testified at trial.  Moreover,

government counsel specifically suggested to the jury that all of the back and forth during the

course of the trial about the use of confidential sources and tips was beside the point.  Rather, the

government urged that the real evidence presented during the trial was the direct evidence,

including the drugs and gun taken from Rich's apartment.  Government counsel argued that this

evidence, by itself, was enough to convict David Rich.  Tr. IV/815-44.  There was no reliance on

or even reference to non-testifying informants.

Furthermore, as discussed in sections III(C) and XIII, the evidence in this case was so overwhelming that even if counsel had objected to the confidential source reference, the verdict would have been the same.

## IX.   THERE WAS NO INEFFECTIVE ASSISTANCE BY COUNSEL'S FAILURE TO OBJECT TO THE JURY INSTRUCTIONS.

The defendant's ninth claim is that trial counsel should have made an objection to the Court's instruction concerning the prior conviction element of the felon-in-possession count (18 U.S.C. § 922(g)(1)).  Def. Br. 27.  The defendant fails to address the complete record on this issue.  An analysis of the entire record demonstrates that the claim is without merit.

### A.     There Was No Deficient Performance on This Issue.

Where a defendant stipulates to the existence of a qualifying prior conviction in a 922(g)(1) case, the probative value of the *nature* of the conviction is diminished and reference to the nature of the prior conviction should be excluded.  *See Old Chief v. United States*, 519 U.S. 172, 178 (1997).  In this case, Rich stipulated to the fact that he was a prohibited person by virtue of having a prior conviction.  Tr. III/451.  Therefore, there was no reason to tell the jury about the nature of the prior conviction.

The defendant claims that the jury instruction given by the Court erroneously identified the nature of the defendant's prior conviction.  Def. Br. 27.  The defense rests that argument on an incomplete quotation of the Court's jury instructions.  Def. Br. 27 (quoting part of the Court's instructions at Tr. IV/926).

A complete analysis of the Court's instructions demonstrates that the reference to a prior drug conviction by Rich was a minor slip of the tongue, which the Court immediately corrected:

The Government contends that the Defendant, David Rich, was convicted of possession with the intent to distribute a controlled dangerous substance.  I charge you as a matter of law that the crime that the Defendant has stipulated to is a crime that would not permit him to legally possess a gun.  The parties have stipulated that the Defendant was convicted of a crime in State Court and that the crime was punishable by imprisonment for a term exceeding one year.  ***Let me make that clear.  The only thing that has been established is that the Defendant was convicted of a crime in State Court, and that the crime is punishable by a term exceeding one year.***  It has also been stipulated that the felony conviction occurred before the time that the Defendant was alleged to have possessed the weapon charged in the Indictment and that his civil rights had not been restored.

Tr. IV/926 (emphasis added).

The Court continued a bit later:

I instruct you in this connection that prior conviction that is an element of the charge here is not disputed, is only to be considered by you for the fact that it exists, and nothing else.  You are not consider it for any other purpose.  You are not to speculate as to what it was for.  You may not consider the prior conviction in deciding whether it's more likely than not that the Defendant was in knowing possession of a gun charged, which is the disputed element of the offense.

Tr. IV/927.

The record make perfectly obvious that the Court simply mistakenly referenced the nature of the prior conviction (probably because the draft jury instructions still contained the alternative language for cases in which defendants to not stipulate).  The Court and counsel for both parties discussed the issue immediately after instructions.  Tr. IV/938.  The Court noted that it had almost read out the nature of the conviction, and counsel for the government mentioned that he was about to "jump up."  Tr. IV/938.  The Court observed that it was obviously something that had escaped everyone's eyes during the charging conference.  Tr. IV/938.  The record also makes clear that everyone thought the matter was resolved, and that no harm was done.  In short, this was a simple misstatement, and not a formal jury instruction.

For several reasons, there was no prejudice caused by this fleeting, brief, misstatement

37

and any further objection[6] or mistrial would have been futile.  First, the Court immediately

corrected the instruction and advised the jury in the clearest, most unambiguous language

possible that the nature of the conviction was not relevant to the case.  Tr. IV/926.  The Court

clarified that the stipulation only established that the defendant had a prior conviction, not what

the conviction was.  Tr. IV/926.  The Court also instructed the jury that it was not to speculate as

to the nature of the conviction, and that the conviction was only relevant inasmuch as it

constituted an element of the 922(g)(1) count.  Tr. IV/926-27.  The Court's careful correction of

the record would have caused the jury to believe that the reference to the possession conviction -

if the jury even heard that reference at all - was simply a mistake to be disregarded.

Second, the actual stipulation that was read to the jury made no reference whatsoever to

the nature of the defendant's prior conviction.  Tr. III/451.  Consistent with *Old Chief*, the only

thing that the stipulation stated was that the defendant had a prior conviction for a crime

punishable by a term of imprisonment exceeding one year.  Tr. III/451.  Thus, the jury had the

stipulation itself and was aware that the parties had *not* agreed on the nature of the prior

conviction.

Finally, neither party ever alluded to the nature of the prior conviction during closing

arguments.  Consistent with the law, counsel for the government simply argued that the

---

[6]     A further objection to the instruction would have been unnecessary and counter-
productive.  The Court immediately corrected the statement, and went out of its way to advise the
jury that the nature of the conviction was not established in the record, not part of the stipulation,
and not relevant to the case.  Tr. IV/926.  A further objection would not have accomplished
anything and would have simply drawn more attention to the matter.

Likewise, a motion for mistrial would have been denied.  The Court corrected the matter,
advised the jury properly, and the matter did not have any impact on the verdict.

defendant had stipulated to his prior conviction.  Tr. IV/815-44.  At no point during the closing argument did government counsel ever allude to the nature of that prior conviction.

Given that record, it would be been fruitless and futile for trial counsel to have sought any further redress through objection, or to have moved for a mistrial.

### B.      The Defendant Has Not Demonstrated Prejudice on This Issue.

The defendant cites to a number of cases, consistent with *Old Chief*, that stand for the proposition that the nature of a prior conviction is not told to a jury in a 922(g)(1) prosecution where the defendant enters into a stipulation.  The government certainly agrees with that proposition of law.  Those citations, however, somewhat miss the point here.

The question here is not the meaning of *Old Chief*.  The question here is whether counsel was ineffective.  As discussed above, if trial counsel had objected to the jury instruction when read, he would not have accomplished anything of use.  His objection would merely have drawn the jury's attention to the matter further (if their attention was drawn at all).  Moreover, even without an objection, the Court noted the error and corrected the matter itself, immediately and effectively.  The jury was reminded not to worry about the nature of the conviction, that the stipulation did not address the nature of the conviction, and that the nature of the conviction was not relevant.  Further efforts by counsel were unnecessary.

Similarly, if counsel had made a motion for a mistrial, that motion would have been denied.  The comment was fleeting, was immediately corrected, and was overwhelmed by a clean record that complied with *Old Chief* (the rest of the instruction, the stipulation itself, government counsel's closing argument).  No mistrial was necessary, and none would have been granted.

Finally, as discussed in sections III(C) and XIII, a consideration of the complete record in

39

this case demonstrates that the defendant was not prejudiced by this reference because the evidence of his guilty was overwhelming.  The jury convicted Rich because of the drugs and gun in his stash house, his flight, the testimony of his accomplice Tiffany Edwards, and the wiretap. That was more than enough for the jury to convict the defendant without difficulty.

Accordingly, the defendant cannot demonstrate prejudice under *Strickland.*

## X.   THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WITH RESPECT TO A CLAIM THAT THE PROOF AT TRIAL VARIED WITH THE ALLEGATIONS OF THE INDICTMENT.

The defendant's first appellate claim (and his tenth claim overall) is a claim that appellate counsel should have pursued an appeal based on a claim of variant proof.  Def. Br. 29-30.  The defendant's claim is without merit.

### A.   There Was No Deficient Performance on This Issue Because There Was No Variance Between the Indictment and the Proof.

The variance claim is based entirely on the theory that the evidence proved two conspiracies rather than one.  That issue has already been addressed in section I, *supra*.  The evidence established a single conspiracy, including Raymond Stern, his courier Tiffany Edwards, customers David Rich and Mark Owens, and Tiffany Lucas.  This was a single drug-trafficking conspiracy revolving around a core group.  *See Burgos*, 94 F.3d at 857.  Edwards testified that she ran heroin for Stern to his customers in 2007 and 2008.  Tr. II/333, 335.  Rich was a member of that distribution chain.  The conspiracy alleged heroin conduct from 2007 until August 2008. There was no variance. Therefore, counsel cannot be called deficient for not asserting this claim on appeal.

**B.**   **There Was No Prejudice Because an Appeal Based on Variance Would Have Failed.**

The defense cannot establish prejudice.  As discussed in section I and section X(A), *supra*, there is no merit to the defendant's variance argument.  Therefore, any appeal on that theory would have been unsuccessful and there is no reasonable probability that such an appeal would have changed the outcome of this case.

**XI.**   **THERE WAS NO INEFFECTIVE ASSISTANCE OF COUNSEL WITH RESPECT TO THE DISTRICT COURT'S COMMENTS TO COUNSEL, BECAUSE THE COMMENTS WERE PROPER.**

The defendant's eleventh claim is that trial counsel should have pursued an appeal based on comments the Court made to counsel during the trial.  This argument also fails.

**A.**   **There Was No Deficiency on This Issue Because There Was No Basis to Appeal the Conviction Based on the Court's Comments.**

Questions of trial management are quintessentially the province of district courts.  *See United States v. Smith*, 452 F.3d 323, 333 (4th Cir. 2006).  This authority includes the power to question witnesses, to maintain courtroom discipline, and to direct comments to counsel, even on the record, that might seem like criticism.  *See id.* at 331 (no reversible or plain error where district court on 19 occasions directed questions to witnesses, and made various comments to defense counsel to move on or to avoid irrelevant subject matters).  The Fourth Circuit has recognized that "even a stern and short-tempered judge's ordinary efforts at courtroom administration...do not establish bias or partiality."  *Id.* at 333.  "A tart remark of two might be what is needed to keep a lengthy trial on track."  *Id.*

In this case, there was nothing improper about the Court's comments.  Trial counsel asked a question, an objection was made, and the Court sustained the objection.  Tr. III/688.

Counsel then asked the same question a second time.  Tr. III/688.  Again, the Court sustained.

Tr. III/688.  At that point, trial counsel attempted to engage in an on-record argument with the

Court about the question.  Tr. III/688.  The Court instructed defense counsel "no speeches," and

ordered counsel to move to the next question.  Tr. III/688.  When counsel did not obey that

instruction, the Court made the comments at issue.  Tr. III/688.  The Court told counsel not to

embarrass himself with speeches, and told him he was not helping his case.  Tr. III/688-89.  The

rest of the conversation took place at the bench.  Tr. III/689-90.

Any appeal based on these comments would have failed.  First, the Court's comments

were proper.  Trial counsel disobeyed the Court's instruction to move on, and attempted to make

a speaking objection on the record in contravention of the Court's order.  Tr. III/688.  It was

proper for the Court to exercise courtroom discipline, even with slightly sharp language, in order

to maintain control of the proceedings and to keep things moving in an orderly fashion.  The law

permits a trial judge to control his courtroom.  The Court acted well within the bounds of that

authority.

Second, the manner of the Court's handling of the matter eliminated any risk of unfair

prejudice to the defendant.  The Court's comments were limited only to a criticism of defense

counsel's conduct in that one instance.  The Court did not address its comment to David Rich

personally.  The Court did not mention David Rich by name or even in an indirect way.  The

Court expressed no opinion and made no comment about the state of the evidence, the charges or

the case.  The Court did not display even the slightest opinion about the merits of the

government's or the defendant's cases.  There is no way that this comment had any influence on

the jury at all, and the absence of any influence would have caused any appeal to fail.

42

Finally, the Court's jury instructions provided further security that the jury was not influenced by any comment it made during the trial. The Court instructed the jury that it was the sole judge of the facts. Tr. IV/888. Nothing that the attorneys, or the Court, had said during the trial was evidence. Tr. IV/888. Importantly, the Court instructed the jury, "[b]ecause you are the sole and exclusive judges of the facts, I don't mean to indicate any opinion as to the facts of what your verdict should be." Tr. IV/888-89. The Court continued, "my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of the evidence. You are the sole judges of the believability of all the witnesses and the weight and effect of all the evidence." Tr. IV/889. Such instructions certainly eliminated any possible prejudice from the Court's comments. *See Smith*, 452 F.3d at 333-34 (finding no error and noting that the trial judge had properly instructed the jury that nothing it had said during the trial should be interpreted as a commentary upon the evidence).

Thus, the defendant has not demonstrated that there was any merit to an appeal based on the Court's comments, and therefore it was not unreasonable for counsel to not pursue such an appeal.

**B.     There Was No Prejudice on This Issue Because Any Appeal Would Have Been Unsuccessful.**

As with many of the other claims in the defendant's motion, the defense provides almost no prejudice analysis at all, save a citation to the standard in *Strickland*. Def. Br. 33. In any event, the above analysis, including the Fourth Circuit's decision in *Smith*, demonstrates there was no reversible error from the Court's comments. Therefore, any appeal on that basis would have failed. As such, there is no reasonable probability that such an appeal would have affected the outcome of this case.

43

## XII.   THE SENTENCED IMPOSED WAS LAWFUL.

The defendant's final claim is that he received an "unlawful" sentence because he was enhanced under 21 U.S.C. § 851.  The defendant claims that his two 851 predicate convictions were invalid for various reasons and should not have counted.  The defendant also states that he has filed petitions for writ of error *coram nobis* in the Maryland state courts to have the convictions overturned.[7]

It is well established that federal sentencing proceedings are not an appropriate vehicle for launching a collateral attack on a prior conviction.  *See United States v. Dean*, 604 F.3d 169, 175 (4th Cir. 2010).  The only exception to that rule is where a defendant can demonstrate that his prior conviction resulted from a violation of his Sixth Amendment right to counsel.  *See Custis v. United States*, 511 U.S. 485, 497 (1994).  The defendant does not appear to be making a Sixth Amendment claim with respect to any of his prior convictions here.

Whatever the merits of the defendant's complaints about his prior conviction, they are not properly advanced before this Court.  The defendant has not demonstrated that his sentence was unlawful.  Therefore, his final claim fails.

## XIII.   EVEN TAKEN TOGETHER, THE DEFENDANT'S CLAIMS DO NOT ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL.

Each of the defendant's claims of ineffective assistance of counsel is without individual merit, for the reasons discussed above.  That said, even if the claims are considered in their totality, their cumulative effect still does not establish ineffective assistance of counsel.

---

[7]     The defendant states that Russell Neverdon, Esquire is representing him in one of the *coram nobis* cases.  Def. Br. 34.  Apparently, the defense does not believe that Mr. Neverdon was so ineffective as to preclude him from continuing to represent the defendant on other matters.

As discussed above, the evidence facing the defendant in this case was absolutely overwhelming. The defendant was observed at the 2702 Gresham Way stash location. His control over the location was established by his presence, his access to the location, and documents in his name at the location. The defendant's weak attempt to foist ownership of the apartment over on his girlfriend provided even further evidence that he knew contraband was at the location. The defendant's flight provided even more confirmation.

The contents of Rich's stash location left no doubt as to its purpose, and Rich's possession of the items inside. The house contained more than a half-kilogram of heroin, a loaded firearm, more than $80,000 cash, and enough packaging paraphernalia to maintain a large heroin distribution business.

On top of that was the testimony of Tiffany Edwards. Edwards confirmed the meaning of all of the evidence described above, including Rich's heroin operation, his distribution efforts, his supplier, and the involvement of Tiffany Lucas who was also identified meeting with Rich at the stash location.

In the face of that evidence, Rich's post-conviction motion advances a series of minor, debatable, alleged mistakes made by trial counsel, and then asserts (by ten repetitious and bald citations to the *Strickland* prejudice prong) that these mistakes affected the trial. They did not. The jury did not convict Rich because of comments from the Court, a reference to the arrest warrant, or any of the other nit-picking issues mentioned in the defense brief. They convicted him because of the evidence. Moreover, for the reasons already discussed, counsel's decisions during this case did not constitute mistakes or deficient performance.

Further, the defense's *Strickland* argument ignores the overarching defense that trial

45

counsel was pursuing: an attempt to call Rich's guilt into question by establishing that the police

investigation was defective, fraudulent, or "rotten." Tr. IV/863. Throughout the trial, counsel

repeatedly pointed out instances in which David Rich could be separated from the drugs, or in

which evidence of his direct possession of drugs was lacking. Tr. II/182, 348, 350-52, 359-60,

III/581, 586 (calling notion of a link between Rich and other conspirators "speculation"), 587

(pointing out lack of hard evidence), 610, 658, 684.

Likewise, counsel emphasized a theme of bad or corrupt police work in connection with

the handling of confidential source information, Lunsford, and the investigation in general. Tr.

I/27 (referencing possible "taint" caused by the confidential source), 30 (discussing Lunsford

"taint"), 68 (asking regarding pre-surveillance debriefings, and availability of information), 79,

85 (questioning the decision to enter the apartment without a warrant), 111 (discussing whether

the defendant was injured by police dog), II/173 (commenting that police officer did not know

*Miranda* warnings by heart), 176-77 (probing regulations concerning use and payments to

confidential informants), 182 (emphasizing that the only legal basis for the arrest of Rich was the

arrest warrant), 184 (registration regulations for confidential informants), 185 (scope of

Lunsford's role in the investigation), 198 (same), 298-300 (questioning the decision to enter the

apartment without a warrant), III/589 (history of TFO Shutt's dealings with the informant), 591-

92 (inquiries concerning methods of use of confidential informant[8]), 596 (use, reliability and

timing of confidential source information), 618 (pointing out discrepancies between use of one

---

[8]     The government actually objected to a line of questioning at Tr. III/591-92 on the
grounds that it risked the disclosure of the confidential informant's identity. The Court overruled
that objection on the ground that defense counsel was properly exploring law enforcement
methods. Tr. III/591-92.

cooperating witness versus another), 619 (suggesting Lunsford was involved in the
investigation), 620 (suggestion of a link between the confidential source and Lunsford), 658-59
(inquiring as to the specific date of controlled buys by the informant).

Defense counsel capped those attacks with a closing argument that emphasized the lack
of a concrete link between David Rich and much of the drug evidence.  Tr. IV/847, 851-52.
Counsel also suggested that the case was tainted by the use of cooperators, like Tiffany Edwards
and the confidential informant, who received benefits for setting up Rich.  Tr. IV/845-46.  In
short, counsel suggested, the case was "rotten."  Tr. IV/863.

Perhaps the defendant now feels that this strategy was wrong, or that a different strategy
would have been better.  The defense is entitled to that opinion, but a *Strickland* claim of
deficient performance cannot be made out by second-guessing or "grading" an attorney's tactical
decisions, provided that those decisions are within the bounds of reasonable attorney
performance.  *See Carter*, 283 F.3d at 249-50.  In the face of such a strong government case,
counsel did what he could to mount a defense.

Trial counsel's attempt to fall on his sword in his affidavits does not change any of this.
The defense has managed to procure an affidavit from trial counsel in which counsel confesses to
much of the alleged ineffective assistance of counsel described in the affidavit.  ECF 79-1.
Although the defense trumpets this affidavit throughout much of its 2255 motion, the fact is that
the affidavit offers nothing to the defense position.  An examination of the affidavit demonstrates
that while counsel has dutifully adopted all of his client's[9] legal arguments, his factual and legal

---

[9]         As discussed elsewhere, David Rich continues to be a client of Russell
Neverdon's with respect to a pending *coram nobis* challenge.  For all of the mistakes counsel is
accused of making in this case, it appears that Rich is still willing to be represented by him.

47

arguments suffer from the same defects as the motion itself.  Counsel writes that he should have objected to the testimony of Tiffany Edwards, ECF 79-1 at 1, but does not provide any support for his belief that such a motion would have been granted.  Counsel states that he should have sought additional discovery concerning Mark Lunsford, but omits any reference to the efforts he made during trial to use the Lunsford evidence.  ECF 79-1 at 2.  Moreover, counsel provides no hint as to what he thinks he would have gained through such requests.  ECF 79-1 at 2.  Finally, counsel confesses to ineffectiveness with respect to the felon-in-possession jury instruction, but also omits from his affidavit any discussion of the context of that incident, or why any objection to the comment would have garnered any benefit to the defense.  ECF 79-1 at 3.

Finally, like the motion itself, counsel's affidavit repeats the reasonable probability standard of prejudice multiple times, but never once engages in any substantive analysis concerning that claim of prejudice.  In short, counsel makes not a single factual argument as to *why* the result of the proceedings would have been different had these alleged mistakes not taken place.

The supplemental affidavit (ECF 82-1) suffers from similar flaws.  Trial counsel makes a series of confessions in which he repeats, again almost word for word, the legal arguments advanced in the 2255 motion.  ECF 82-1.  Counsel provides even less analysis than the 2255 motion does.  Counsel says that he was deficient for failing to object to confidential informant references to Rich as a drug-dealer, but does not state why he believes such objections would have been sustained.  ECF 82-1 at 1.  Trial counsel talks about making a mistake with respect to the arrest warrant, but says nothing about why the information was elicited, or what other means existed to provide an exculpatory explanation for Rich's flight.  ECF 82-1 at 2.  Finally, the

supplemental affidavit (like the original) is devoid of any substantive analysis of prejudice.

In effect, counsel's affidavit is little more than a cut and paste job from the defense motion.  Counsel's self-accusations of deficient performance do nothing except parrot the motion's legal arguments.  As such, the affidavits fail just as much as the motion does.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Vacate.

Respectfully Submitted,

ROD J. ROSENSTEIN
United States Attorney


By: _____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4895
Fax: (410) 962-3124

CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 7th day of January 2013, that a copy of the foregoing was

dispatched by first class mail and by ECF to:

> Daniel H. Ginsberg, Esquire
> The Law Office of Daniel Ginsburg, LLC
> One Research Court, Suite 450
> Rockville, Maryland 20850


> _____/s/_____
> Michael C. Hanlon
> Assistant United States Attorney

50